IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAVID LAVIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:23-CV-503-RP |
| | § | |
| SECTIGO, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant Sectigo, Inc.'s ("Sectigo") Motion for Summary Judgment, (Dkt. 23), Plaintiff David LaVin's ("LaVin") response, (Dkt. 25), and Sectigo's reply, (Dkt. 26). Having considered the parties' submissions, the record, and the applicable law, the Court will **GRANT IN PART AND DENY IN PART** Sectigo's motion for summary judgment.

### I. BACKGROUND

This is an employment discrimination case. LaVin claims his employer, Sectigo, discriminated against him because of his age, in violation of the Age Discrimination in Employment Act ("ADEA") and the Texas Labor Code ("TCHRA"). (Dkt. 1, at 1). Sectigo is a cyber security company that sells digital certificates and automated certificate life cycle management solutions. (Dkt. 23, at 3). LaVin was hired by Sectigo in February of 2022 and began working in March as an Enterprise Regional Sales Manager. (*Id.* at 4). In September of the same year, LaVin's employment was terminated, when LaVin was 53 years of age. (*Id.* at 9).

Jennifer Binet ("Binet"), Sectigo's Senior Vice President of Sales and manager of the Enterprise Sales department, both hired LaVin and made the ultimate decision to terminate him. (*Id.* at 3). LaVin was hired to replace Ruben Garcia ("Garcia"), who was being promoted. (*Id.* at 5). In his role, LaVin was responsible for sales to customers in Sectigo's "North Central" and "TOLA"

1

regions, which included Texas, Oklahoma, Louisiana, and Arkansas. He was responsible for clients and prospective clients that had 5,000 or more employees. (*Id.* at 3). Sectigo expected him to achieve an assigned sales quota for his geographic region and identify and manage opportunities for new sales and clients. (*Id.* at 4).

On September 8, 2022, just a few months into his employment, Binet informed LaVin over an audio conference that his employment was being terminated. (*Id.* at 9). Binet explained to LaVin that his termination was part of a restructuring effort and was not a reflection of his performance. (*Id.*). In that same conversation, LaVin expressed concerns about "lies and harassment" and Sectigo being "dysfunctional." (*Id.*). Immediately following LaVin's termination, Garcia resumed responsibility for LaVin's sales territories. (*Id.* at 10).

LaVin brought this suit, alleging that Sectigo's decision to terminate his employment was motivated by age discrimination and retaliation. LaVin also filed a complaint with the Equal Employment Opportunity Commission alleging violations of the ADEA. (Dkt. 1, at 3). LaVin alleges that before his termination, Binet said the company needed to "get some young blood in that territory," referencing Austin, Texas, which was LaVin's sales territory. (LaVin Dep., Dkt. 23-1, at 160:14–161:10). This comment was made on a conference call with several Sectigo employees, and LaVin heard Binet make the comment as he was logging on to the call. (*Id.* at 161). Directly after Binet made this comment, another person on the call inquired if Alex Occhiogrosso ("Occhiogrosso"), a younger Sectigo employee, was moving to Austin. (*Id.* at 161:1–10). A different Sectigo employee on the call, Sara Countryman ("Countryman"), understood Binet's comment as a reference to LaVin and his territory, and contacted LaVin after the call to inquire if LaVin was planning to leave Sectigo. (Countryman Decl., Dkt. 25-3, at ¶¶11, 12). Around five months after

2

LaVin's termination, Occhiogrosso, who had recently moved to Austin, was promoted, and began to cover the sales regions previously covered by LaVin. (Dkt. 23, at 10).

Sectigo has moved for summary judgment, arguing there is no material dispute that LaVin was not replaced by someone under 40 or otherwise discharged because of his age, LaVin was let go as part of restructuring because he was underperforming, and he presents no evidence that this reason is a pretext for age discrimination. (Dkt. 23). LaVin argues he was replaced by someone under 40, Occhiogrosso, and there is evidence of pretext in the form of Binet's "young blood" comment, Sectigo's changing reasons for his termination, and Occhiogrosso's promotion. (Dkt. 25).

## II. LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and

3

unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin All. v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

### III. DISCUSSION

LaVin brings two claims under the ADEA, a claim of retaliation and a claim of age discrimination. (Dkt. 1). He brings his claim of age discrimination under the TCHRA as well. (Dkt. 1). Sectigo has moved for summary judgment on all three claims.

#### A. Retaliation

To establish an ADEA retaliation claim, a plaintiff must show (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1226 (5th Cir. 1996). Sectigo argues it is entitled to summary judgment on LaVin's retaliation claim because LaVin did not engage in a protected activity prior to his termination. (Dkt. 23, at 12). The Court agrees. LaVin argues he engaged in protected activity by filing a complaint with the EEOC and by expressing his concerns to Binet on the call where he was terminated. (Dkt. 25, at 19) (citing LaVin Decl., "I am the wrong person being let go here . . . you know, for a company that you provided me nothing but lies about, and I appreciate the harassment."). However, LaVin took both actions after he was informed of his termination. His termination could not have been in retaliation

4

for actions he took after he was terminated. *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999). And further, LaVin presents no evidence of an adverse employment action suffered after he took these actions. Accordingly, Sectigo's motion for summary judgment as to LaVin's retaliation claim is granted.

### B. Age Discrimination

At the outset, the parties disagree over whether LaVin presents direct or circumstantial evidence of discrimination, which affects the evidentiary burden that governs his claim. Sectigo argues LaVin provides only circumstantial evidence, so the burden shifting structure set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. (Dkt. 23, at 13). LaVin asserts that Binet's "young blood" comment constitutes direct evidence of discrimination, so the burden shifting of *McDonnell Douglas* is inapplicable. To determine whether comments in the workplace constitute direct evidence, the Court looks to four factors: whether the comments are (1) related to the plaintiff's protected characteristic, (2) proximate in time to the challenged employment decision, (3) made by an individual with authority over the challenged employment decision, and (4) related to the challenged employment decision. *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015), *as revised* (Feb. 3, 2015). The ultimate focus is on whether the comment proves "without inference or presumption" that discrimination was a basis in the employment decision. *Id.* Here, Binet's "young blood" comment was not made directly towards LaVin, nor did the comment explicitly reference LaVin. It takes an inference or presumption to connect the comment to LaVin or his termination. *Cf. Etienne* 778 F.3d at 476 (finding employer's comment that "[the plaintiff] was too black to do various tasks at the casino" to be direct evidence). So, the

5

comment constitutes circumstantial evidence, and the Court will apply the *McDonnell Douglas* framework, as set out below.

LaVin brings his age discrimination claim under both the ADEA and the TCHRA. Age discrimination claims are analyzed almost identically under both the federal and state statute, with one small deviation. *See Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606–07 (5th Cir. 2007). Both claims require a plaintiff to establish (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470 (5th Cir. 2015). Once a plaintiff establishes this prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the plaintiff's termination. *McDonnell Douglas*, 411 U.S. at 802. If the employer proffers such a reason, the burden returns to the plaintiff to prove that the employer's reason is pretext for unlawful discrimination. *See Septimus v. Univ. of Hous.*, 399 F.3d 601, 607 (5th Cir. 2005). The AEDA and the TCHRA differ at the pretext stage; the AEDA requires a showing that discrimination was a "but-for" cause of the termination, while the TCHRA uses a lower standard, requiring a showing that either (1) the stated reason by the employer was a pretext for discrimination or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor. *Goudeau*, 793 F.3d at 474–75.

A plaintiff does not have to establish a prima facie case to survive summary judgment; rather, he must raise a material question of fact as to the existence of a prima facie case. *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 811 (5th Cir. 1991). A failure to establish a prima facie case means merely that the factfinder is not required to find in the plaintiff's favor. *Id.* at 812. Here, Sectigo disputes that there is a material question of fact regarding the fourth factor of LaVin's prima facie case—that he was replaced by someone younger or otherwise discharged because of his age.

(Dkt. 23, at 14). Sectigo asserts that Garcia, a man over 40, immediately took over LaVin's sales territory, and the fact that the younger Occhiogrosso did not become an enterprise sales manager in that territory until months later defeats LaVin's showing that he was replaced by someone younger. (*Id.* at 17). However, Plaintiff highlights that Garcia being over 40 does not rule out that LaVin was replaced by someone younger, as LaVin was 53 at the time of his termination. (Dkt. 25, at 9, n. 2) (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)). Therefore, LaVin's prima facie case is established by showing either Garcia or Occhiogrosso replaced him.

The evidence presents a material question of fact as to who replaced LaVin. Binet asserts Occhiogrosso was not promoted until early 2023. (Binet Dep., Dkt. 23-1, 91:21). But Countryman recounts that after LaVin was terminated, all opportunities in Texas were to be sent to Occhiogrosso. (Countryman Decl., Dkt. 25-3, ¶19). Sectigo disputes Countryman's credibility in offering this evidence, (Dkt. 26, at 9), but the Court may not make credibility determinations at the summary judgment stage. *Reeves*, 530 U.S. at 150. A reasonable fact finder could come to a number of conclusions based on this evidence. They could find LaVin was replaced by Garcia, but Garcia was still younger than LaVin, or they could find Garcia was a temporary substitute for LaVin's true replacement, Occhiogrosso. Or, they could find Occhiogrosso's promotion was truly unrelated to LaVin's termination and Occhiogrosso did not replace LaVin. This question of fact allows LaVin to survive summary judgment, because there is a material question of fact regarding the existence of a prima facie case.

Sectigo argues it is still entitled to summary judgment because LaVin fails to present evidence raising a material question of fact regarding his ultimate burden. Ultimately, LaVin must show that Sectigo's non-discriminatory reason for terminating LaVin was pretext for discrimination. *See Septimus*, 399 F.3d at 607. Sectigo offers financial headwinds and restructuring as its non-discriminatory reasons for LaVin's termination. (Dkt. 23, at 15). In response, LaVin argues that (1)

7

Binet's "young blood" comment, (2) Binet's changing reasons for LaVin's termination, and (3) Occhiogrosso's promotion, taken together, are sufficient evidence to create a material question of fact whether this reason is pretextual. (Dkt. 25, at 14). The Court agrees with LaVin, addressing each piece of evidence in turn.

"[C]ourts will find evidence of age discrimination where the employer's statement shows a desire to replace older employees with younger ones." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 458 (5th Cir. 2019). But, vague or indirect comments on age are merely "stray remarks" that do not demonstrate age discrimination. *E.E.O.C. v. Texas Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996). If relied on alone, Binet's "young blood" comment likely qualifies as a stray remark and would not defeat summary judgment. However, "when discriminatory remarks are just one ingredient in the overall evidentiary mix, we consider the remarks under a 'more flexible' standard." *Goudeau*, 793 F.3d at 475. "To be relevant evidence considered as part of a broader circumstantial case, the comments must show: (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Id.* (internal quotation marks omitted). Here, Binet's comment implies a preference for having a young salesperson in LaVin's Texas territory, and Binet was the ultimate decisionmaker as to LaVin's termination. So, Binet's "young blood" comment is relevant evidence towards raising a question of pretext.

Sectigo argues that since Binet both hired and fired LaVin, Sectigo benefits from the "same actor" inference and that inference should defeat the probative value of her "young blood" comment, supporting Sectigo's entitlement to summary judgment. (Dkt. 26, at 16). The rationale behind the "same actor" inference is that it is illogical for someone to hire a person she bears animus against just to fire them shortly thereafter. *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996), *abrogated on other grounds by Reeves*, 530 U.S. at 151. However, the cases Sectigo cites to support

this argument do not instruct that the "same actor" inference alone entitles a defendant to summary judgment; rather, the inference is viewed in context with the competing evidence, and a plaintiff may present evidence that overcomes this inference. *See id.*; *see also Scubelek v. Miller Prod., Inc.*, 138 F.3d 952 (5th Cir. 1998); *Houk v. Peoploungers Inc.*, 214 F. App'x 379, 381 (5th Cir. 2007). While the Court does not deny that Sectigo benefits from this inference, the Court finds LaVin's overall mix of evidence sufficient to raise a question of material fact against the inference.

Next, when an employer's explanations for the termination are "shifting," an inference of pretext may be drawn. *Ameristar Airways, Inc. v. Admin. Rev. Bd., U.S. Dep't of Lab.*, 650 F.3d 562, 569 (5th Cir. 2011). When Binet informed LaVin he was being terminated, she emphasized that his termination was not a reflection of his performance. (Dkt. 25, at 16). But now, faced with LaVin's allegations, Sectigo alleges LaVin was an "unproductive resource," (Dkt. 23, at 15), and Binet claims she had "concerns" and "reservations" about LaVin early in his time at Sectigo. (Binet Dep., Dkt. 23-1, at 111:14). When new reasons for the termination arise long after the employee's discharge, it tends to suggest those reasons "are a mere litigation figment." *Ameristar Airways*, 650 F.3d at 569. The contradiction between Binet's original reason for terminating LaVin and her instant explanation raise questions of pretext.

Even if only addressing the instant explanation—that LaVin was underperforming—LaVin presents evidence to raise a question of fact as to whether he was indeed underperforming. And "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 147. Binet claims that LaVin was failing to meet expectations in part because he was unable to add $150,000 to his "pipeline" on a weekly basis, which left him well below others in his position. (Binet Dep., Dkt. 23-1, 17:9). However, LaVin presents evidence that he was on track to meet or exceed his first-year sales goal and was never informed of a specific pipeline quota. (LaVin Decl., Dkt. 25-2,

9

¶¶ 7, 9). So, not only has Binet's explanation for terminating LaVin changed, the evidence also creates a question of fact regarding the truthfulness of her latest reason. "If the trier of fact does not believe the employer to have given a truthful account of its decision, it is reasonable to infer that the most likely explanation is the one the employer cannot admit—that it acted for retaliatory or discriminatory reasons." *Ameristar Airways*, 650 F.3d at 569–70. Between the shifting reasons for LaVin's termination and the contradictory evidence regarding the instant reason, the Court finds a reasonable trier of fact could find that Sectigo's reason for LaVin's termination was pretextual.

Lastly, and perhaps most strongly, Occhiogrosso's promotion serves as evidence of pretext, especially in tandem with Binet's "young blood" comment. Sectigo argues that the five months that elapsed between LaVin's termination and Occhiogrosso's promotion to an enterprise sales manager renders Occhiogrosso's promotion irrelevant. (Dkt. 23, at 16–17). However, it is unrealistic to expect a plaintiff will always be able to show he was immediately replaced by someone younger, especially in a reduction in force case. *See Amburgey*, 936 F.2d at 812 (5th Cir. 1991) (reasoning that when an employer reduces its workforce, a plaintiff may struggle to prove actual replacement by a younger employee). The evidence shows the job descriptions provided to LaVin at his hiring and to Occhiogrosso at his promotion are nearly identical. (Dkt. 25-1; Dkt. 25-4). Further, Occhiogrosso became responsible for the territories LaVin had been responsible for. (Occhiogrosso Dep., Dkt. 23-1, at 29:1–25). The similarities between the job descriptions and the temporal proximity of LaVin's termination and Occhiogrosso's promotion into LaVin's former territory, especially after Binet's "young blood" comment, raise material questions of fact as to whether the reasons for LaVin's termination were pretext for replacing LaVin with the younger Occhiogrosso.

This Court is required to believe LaVin's evidence and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, and having done so, the Court finds LaVin presents sufficient evidence of pretext to defeat Sectigo's motion for summary judgment. "This is not to say that such a

showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 147. But, this remains a question for the factfinder, and summary judgment is inappropriate.

## IV. CONCLUSION

In conclusion, it is **ORDERED** that Sectigo's Motion for Summary Judgement, (Dkt. 23), is **GRANTED IN PART AND DENIED IN PART**. Sectigo's motion is **GRANTED** as to LaVin's retaliation claim, and **DENIED** as to LaVin's age discrimination claims under the ADEA and TCHRA.

**SIGNED** on November 7, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE